BILAL A. ESSAYLI
Acting United States Attorney
JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section
TARA B. VAVERE (Cal. Bar No. 279470)
Assistant United States Attorney
Asset Forfeiture and Recovery Section
    United States Courthouse, 11th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:   (213) 894-5901
    Facsimile:   (213) 894-6269
    E-mail:      Tara.Vavere@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>VIRTUAL CURRENCY,<br><br>    Defendant. | Case No. 2:25-CV-08656<br><br>**VERIFIED COMPLAINT FOR FORFEITURE**<br><br>18 U.S.C. § 981(a)(1)(A) and (C)<br><br>[F.B.I.] |

    Plaintiff United States of America brings this claim against the below-identified defendant, and alleges as follows:

## JURISDICTION AND VENUE

    1.    This is a civil forfeiture action brought pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

    2.    This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. §§ 1355 and 1395.

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant Virtual Currency consists of 155,004.8225 USDC[1] transferred to the government from the account held in the name of Armando Ochoa at Payward Interactive, Inc., dba, Kraken on June 13, 2024, pursuant to a federal seizure warrant executed on June 5, 2024 (the "defendant Virtual Currency").

6. The defendant Virtual Currency is currently in the custody of the United States Marshals Service in this District, where it shall remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Armando Ochoa and the victim identified herein as "J.S." may be adversely affected by these proceedings.

## BASIS FOR FORFEITURE

*Background on Virtual Currency*

8. "Virtual currency" is a digital asset designed to work as a medium of exchange that uses cryptography to secure financial transactions, control the creation of additional units of the currency, and verify and transfer assets. Bitcoin ("BTC") and Ether ("ETH") are two popular types of virtual currency but there are multiple other types of virtual currency.

9. Transactions involving most types of virtual currency are recorded and visible on a public ledger called a blockchain, where each transaction is referred to by a lengthy series of letters or numbers that identify the "address" from which the virtual currency was transferred, and the destination to which the virtual currency was sent. These addresses are analogous to a bank account number.

10. Virtual currency stored at a particular address is accessed using private encryption "keys." Those private keys are necessary to access the virtual currency

---

[1] USDC is also known as USD Coin and is a "stablecoin" type of virtual currency whose value is pegged to the U.S. Dollar.

stored at a particular address. Only the holder of the private key can access or transfer virtual currency out of an address. A private key is analogous to the pin code necessary to access a bank account.

11. Most types of virtual currency record all transactions in that currency on a blockchain. The blockchain serves as an immutable and historical record of transactions in the associated virtual currency and is essentially a distributed public ledger. Blockchains are constantly updated and maintain a record of every transaction and the known balance for each virtual currency address associated with that blockchain. There are different blockchains for different types of virtual currencies, and some virtual currencies have been implemented on multiple blockchains.

12. Virtual currency exchanges ("VCEs") are online trading and/or storage platforms for virtual currencies. VCEs typically store virtual currency belonging to customers. A VCE can store multiple virtual currency addresses associated with a single VCE user.

*Victim J.S. is Defrauded*

13. The Federal Bureau of Investigation investigated a scam which led to the loss of approximately $800,000 to victim J.S. who is a resident of Los Angeles, California. As part of the investigation, the Federal Bureau of Investigation learned the information set forth below.

14. On May 23, 2024, J.S. began receiving multiple robocalls from unfamiliar telephone numbers with Hawaii area codes. Pre-recorded text-to-speech voice messages suggested the calls were notifications from a VCE named Gemini. The calls purported that J.S.'s Gemini account was compromised. Because J.S. had closed his Gemini account and transferred his digital assets to a different VCE named Coinbase, J.S. disregarded these calls and took no action.

15. Around the same time that J.S. was receiving the robocalls, J.S. received numerous Short Message Service ("SMS") messages which contained verification codes to reset account passwords for various online services. The account reset codes appeared

to target J.S.'s accounts at Coinbase, Google, and Facebook, among others.

16. Approximately 20 minutes after receiving the last of the robocalls, J.S. answered a telephone call from a number with a Los Angeles County "747" area code. The caller had a professional demeanor and there was no background noise or unusual delay in the caller's verbal responses. J.S. was therefore certain he was communicating with an authentic human voice and not a computer program. The caller told J.S. that J.S.'s Gemini account was compromised. J.S. informed the caller that J.S. no longer maintained a Gemini account and uses the VCE Coinbase instead. The caller reassured J.S., explaining that Coinbase had acquired Gemini.[2] Although J.S. was initially skeptical, given the volume of alerts, calls, and messages J.S. had received in such a short period of time, J.S. began to believe that his Coinbase account had in fact been compromised.

17. The caller told J.S. that in order to safeguard the funds in J.S.'s existing Coinbase account, they would need to create an uncompromised secondary wallet for receipt of J.S.'s Coinbase funds. J.S. then received SMS messages which contained hyperlinks that, upon clicking, navigated to a website that appeared consistent with Coinbase's official website. In fact, the website was likely a fraudulent or "spoofed" website designed in a manner to appear familiar in order to trick J.S. and induce J.S. to enter account login credentials as J.S. would on a legitimate website. After J.S. logged in to the spoofed website, his credentials were accessible to the fraudsters operating the spoofed website. Once acquired, the fraudsters were able to use J.S.'s credentials to login to J.S's real Coinbase account and conduct fraudulent transactions.

18. Shortly thereafter, J.S. received email confirmations from Coinbase which notified him of two large transfers out of his Coinbase account:

　　a.　One transfer of approximately 50 ETH (worth approximately $191,000 at that time); and

---

[2] Coinbase and Gemini have historically been, and currently remain, distinct cryptocurrency platforms.

        b.    One transfer of approximately 9 BTC (worth approximately $618,411 at that time).

*The Defendant Virtual Currency Constitutes Proceeds of Fraud*

19. Through cryptocurrency tracing and analysis, law enforcement traced the movement of the ETH and BTC stolen from J.S.'s account.

20. Ultimately, 3.017802 BTC that was directly traceable to J.S.'s stolen 9 BTC was transferred to a cryptocurrency address beginning with 39YqrLwg[3] at Payward Interactive, Inc., dba, Kraken (the "Subject Kraken Account"). The BTC was converted to USDC and USDT as described below, and at the time law enforcement executed the federal seizure warrant on June 5, 2024, the Subject Kraken Account contained 155,004.8225 USDC valued at approximately $155,000 (i.e., the defendant Virtual Currency).

*The Stolen ETH*

21. J.S.'s stolen 50 ETH were split between two addresses in the amounts of 39.5207 ETH and 10.5163 ETH. The 10.5163 ETH was sent to a "no Know Your Customer" exchange that does not institute rules designed to help financial institutions identify and verify their customers' identities to prevent money laundering. A "no Know Your Customer" exchange is often utilized by cybercriminals to help launder illicit proceeds derived from criminal activity. The stolen 10.5163 ETH were swapped to BTC and then sent to an instant cryptocurrency exchange platform where they were swapped again for Monero which is a privacy-enhanced virtual currency that operates on the Monero blockchain that is generally untraceable by traditional methods.

22. The larger amount of J.S.'s ETH funds, 39.5207 ETH, were sent to a decentralized exchange that facilitates cross-chain cryptocurrency swaps. The funds were swapped for BTC and then deposited into an address beginning with bc1qlql7, which address was associated with a user account (the "Bustabit User Account") on an

---

[3] For readability, virtual currency addresses are referred to herein by a unique sequence of the initial characters of the address.

online cryptocurrency gambling website named Bustabit.com and were <u>not</u> traced to the Subject Kraken Account from which the Subject Virtual Currency was seized. Bustabit.com operates outside the United States and user accounts on Bustabit.com, such as the Bustabit User Account, can contain multiple addresses.

*The Stolen BTC*

23. Between May 24 and June 3, 2024, J.S.'s approximately 9 Stolen BTC was transferred to five different addresses until a portion of it (i.e., 3.017802 BTC) was ultimately deposited into the Subject Kraken Account and seized by the government. The transactions are as follows:

    a.    On May 24, 2024, 9.06224007 stolen BTC was transferred from J.S.'s Coinbase account to an address beginning with bc1qd53t ("Subject Address One").

    b.    On May 24, 2024, 6.06195807 of the stolen 9.06224007 BTC was transferred from Subject Address One to an address beginning with 14broZVt ("Subject Address Two"). In this transaction, approximately 3 of the stolen BTC (<u>i.e.</u>, 9.06224007 - 6.06195807) were sent to another address associated with the Bustabit User Account.

    c.    On May 24, 2024, 6.06155607 of the stolen BTC was transferred from Subject Address Two to an address beginning with bc1q7ltg ("Subject Address Three"), an address which was also associated with the Bustabit User Account. Bustabit.com's terms of service indicate that users from the United States are strictly prohibited from using their service. Despite this prohibition, Bustabit.com and other similar types of online casinos are commonly used by cybercriminals in the United States and elsewhere to launder and gamble funds which were the proceeds of crime.[4]

---

[4] For example, over the course of approximately two weeks (May 23, 2024 to June 6, 2024), the Bustabit Account User Account received deposits of approximately 41.9 BTC, or approximately $2,900,000. Within that time frame, all but 0.00040094 BTC was gambled away by those persons or entities in control of the Bustabit User account.

*(footnote cont'd on next page)*

Within twenty-four hours of the opening of the Bustabit User Account, the user deposited approximately 10 BTC (valued at approximately $687,123.40), which included the 6.06155607 BTC stolen from J.S. The Bustabit User Account was registered with a YOPmail.com email address which is a service offering disposable email addresses commonly used by cybercriminals and which logged in from geographically diverse locations in the United States, including via the use of a Virtual Private Network, that hides a user's online activity from internet service providers.

      d.    On May 24, 2024, 6.06154 stolen BTC was transferred from Subject Address Three to an address beginning with bc1qa3g2 ("Subject Address Four"), which is believed to be an address controlled by Bustabit.com.

      e.    On June 1, 2024, 3.1381 stolen BTC was transferred from Subject Address Four to an address beginning with bc1qdakt ("Subject Address Five"), which address was controlled by an individual by the name of Armando Ochoa. At the time, Armando Ochoa was a beneficial owner of Bustabit.com.

      f.    Finally, on June 3, 2024, 3.017802 stolen BTC was transferred from Subject Address Five to the Subject Kraken Account, also controlled by Armando Ochoa.

24.    In a series of quick transactions within the Subject Kraken Account, all the remaining (3.017802) stolen BTC was traded for USDC and Tether ("USDT").

25.    Within an hour of the deposit of the stolen BTC, which was now in the form of USDT and USDC, the following transfers from the Subject Kraken Account were made in rapid-fire succession to the following entities:

      a.    50,085.8582 USDT was sent to foreign VCE Bitstamp;

      b.    33,638.5329 USDC was sent to foreign VCE Bitso;

      c.    80,000 USDC was sent to foreign VCE Binance; and

      d.    20,000 USDC was sent to foreign VCE Nexo.

---

The use of anonymous service providers, unaccounted high-value transactions, and no identity verification are all indicators of money laundering.

26. Foreign VCEs such as Bitstamp operate outside the United States and often do not comply with United States legal orders except on a voluntary basis. After the foreign transfers were made, all that remained inside the Subject Kraken Account was the USDC. As set forth in paragraph 1 above, the government seized 155,004.8225 USDC (i.e., the defendant Virtual Currency) from the Subject Kraken Account.

## FIRST CLAIM FOR RELIEF

27. Based on the facts set forth above, plaintiff alleges that the defendant Virtual Currency constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1343 (wire fraud), which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1). The defendant Virtual Currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM FOR RELIEF

28. Based on the facts set forth above, plaintiff alleges that the defendant Virtual Currency constitutes property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i) or (a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. §§ 1341 (wire fraud). The defendant Virtual Currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant Virtual Currency;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant Virtual Currency to the United States of America for disposition according to law; and

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: September 12, 2025

BILAL A. ESSAYLI
Acting United States Attorney
JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section

　　　　*/s/*
TARA B. VAVERE
Assistant United States Attorney
Asset Forfeiture and Recovery Section

Attorneys for Plaintiff
United States of America

## VERIFICATION

I, Jacob Frederick, hereby declare that:

1. I am a Special Agent with the Federal Bureau of Investigation and the case agent for the forfeiture matter entitled *United States of America v. Virtual Currency.*

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 10, 2025 in Los Angeles, California.

_____
JACOB FREDERICK
Special Agent

10